


**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JRS:DEL/JML
F. #2018R00550

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 8, 2023

By ECF

Honorable LaShann DeArcy Hall
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Garri Smith
Criminal Docket No. 21-208

Dear Judge DeArcy Hall:

The government respectfully submits this sentencing memorandum in advance of defendant Garri Smith's sentencing for conspiracy to commit money laundering. The government respectfully recommends that the defendant receive a sentence in the Guidelines range of 57 to 71 months imprisonment.

I. Background

For over four years, defendant Garri Smith and his co-conspirators stole money from foreign banks while living in the United States. Members of the conspiracy, including Smith, traveled to foreign banks in at least eight countries. While in these foreign countries, Smith and other members of the conspiracy would pose as a customer at the target banks. They would then rent safe deposit boxes at the banks, sometimes using a fake identification document. After they gained access to safe deposit box rooms, they used specialized medical equipment to take photographs of the inside of the locks on other customers' safe deposit boxes. Using these photographs, the conspirators created duplicate keys to the safe deposit boxes. Finally, they used the keys to steal money from the safe deposit boxes of legitimate customers at the banks. They stole millions of dollars which they laundered into the United States.

The defendant personally participated in several bank heists. For example, the defendant participated in a January 2018 heist of a bank in Riga, Latvia. The defendant traveled to Latvia a few weeks before the heist. The defendant's trip to Latvia was booked through co-defendant Alex Levin's wife's travel agency and the defendant's plane ticket was paid for by a credit card in the name of co-defendant Val Cooper's wife. Before the defendant arrived in Latvia, another co-conspirator took photographs of the inside of the locks on the safe deposit

boxes at the bank and arranged to have duplicate keys made for the boxes. These keys were then given to the defendant. To gain access to the safe deposit box room, the defendant pretended to be a customer at the bank and opened a safe deposit box in his name. The defendant then used the duplicate keys to open the boxes. Before stealing the content of the safe deposit boxes, the defendant visited the bank on several occasions to open the boxes and discovery their contents. Finally, the defendant and a co-conspirator came back to the bank and used their duplicate keys to steal over $2 million (in both cash and precious metals) from the bank's customers. The bank's hidden security video captured the defendant and his co-conspirators during their several trips to the bank where they coordinated the heist and ultimately stole the content of the safe deposit boxes. Some stills from this video are below.

The first still below depicts the defendant's co-conspirator (whose face is blacked out) using medical equipment to photograph the inside of one of the safe deposit locks on December 19, 2017.




The two stills below depict the defendant opening safe deposit boxes at the bank using duplicate keys and inspecting the content of these boxes on January 4, 2018.






Finally, the two still images below show the defendant taking items from the safe deposit boxes and putting them in his bag during the heist on January 15, 2018.







After the Latvian heist, the co-conspirators met up at a hotel and divided the bags with the stolen money and other valuables. Later, the co-conspirators made several large bank transfers using shell companies to launder the money.

In addition to the Latvian bank heist, the defendant also participated in other bank heists. For example, the defendant rented two safe deposit boxes at a Maldovan bank which he then allowed co-conspirators to access. The co-conspirators then stole money and valuables from bank customers using the same methods described above (the creation of duplicate safe deposit keys). Travel records also show the defendant was present in foreign countries around the time of bank heists. For example, the defendant traveled to Macedonia before his co-conspirators executed a similar bank heist there. The defendant's travel was again arranged through co-defendant Alex Levin's wife's travel company.

The defendant also participated in money laundering related to the heists. For example, in 2015, he received $70,000 from a shell company associated with the conspiracy. Then, in 2016, around the time of the Maldovan heist, he received $12,000 from a different shell company associated with the conspiracy. He also made several transfers of money (including by check) in 2017 to an account in the name of co-defendant Val Cooper's wife. Many of these transfers were just under $10,000. Because banks flag any transfer or deposit over $10,000, these transactions were apparently designed to avoid any red flags. This was not the defendant's only attempt to avoid law enforcement. He also changed his name from Igor Berk to Garri Smith in 2018, after a co-conspirator in the bank heist scheme was arrested.

In April 2021, the defendant was charged with conspiracy to commit money laundering and conspiracy to violate the travel act for his participation in the bank heist scheme. He pled guilty to conspiracy to commit money laundering.

## II. Guidelines Calculation

The applicable Guidelines range is 57 to 71 months' imprisonment based on an offense level of 25 and a criminal history category of I.[1] The government calculates the Guidelines range as follows:

| | | |
|---|---|---|
| Base Offense Level (U.S.S.G. §§ 2S1.1(a)(1); 2B1.1(a)(2)) | | 6 |
| Plus: | Loss amount over $3,500,000 (U.S.S.G. § 2B1.1(b)(1)(J)) | +18 |
| Plus: | Ten or more victims (U.S.S.G. § 2B1.1(b)(2)(A)(i)) | +2 |
| Plus: | Sophisticated means (U.S.S.G. § 2B1.1(b)(10)(C)) | +2 |
| Plus: | Convicted under 18 U.S.C. § 1956 (U.S.S.G. § 2S1.1(b)(2)) | +2 |
| Less: | Acceptance of Responsibility (§ 3E1.1) | -3 |
| Less: | Zero-point offender (§ 4C1.1) | -2 |
| Total: | | 25 |

## III. Appropriate Sentence

The government respectfully submits that the sentencing factors listed in 18 U.S.C. § 3553(a) support a sentence within the Guidelines range of imprisonment of 57 to 71 months. As the Court is aware, Section 3553(a) requires sentencing courts to consider a number of factors in imposing a sentence, including the nature and circumstances of the crime and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the crime, promote respect for the law, and provide just punishment; the need for the sentence to adequately deter criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed education, vocational training, medical care and/or other correctional treatment in the most effective manner. Sentencing courts must also consider the kinds of sentences available, the applicable Guidelines and pertinent policy statements, and the need to avoid unwarranted sentencing disparities.

These factors, on the whole, weigh in favor of a Guidelines sentence here. The defendant's crime was quite serious and was motivated by greed. He participated in multiple bank heists over a period of years and stole millions of dollars. These heists were sophisticated and required extensive planning. The defendant played a critical role in the heists. He traveled abroad to the banks, he posed as a customer, and he personally emptied the victims' safe deposit

---

[1] This Guidelines calculation is lower than the Guidelines calculation contemplated in the plea agreement and in the PSR because of the November 1, 2023 amendments to the Guidelines. Due to these amendments, the defendant receives an additional two-point reduction in his offense level because he has zero criminal history points. The defendant stipulated to the Guidelines calculation in the parties' plea agreement.

boxes. These safe deposit boxes contained not only money but other items of value like jewelry, which is irreplaceable. The defendant also laundered the money from the heists, including by using shell companies and designing financial transactions to be under the reporting requirements. The defendant's behavior further demonstrated a disregard for the law when he changed his name in an attempt to avoid being caught.

A serious prison sentence is also appropriate here for general deterrence. The defendant and his co-conspirators lived in the United States but regularly committed bank heists abroad. Their crimes impacted people in many countries and resulted in multiple investigations from foreign law enforcement. Given the degree of international coordination required to investigate crimes like these, they often go unprosecuted. Therefore, others may be tempted to commit crimes like these thinking that they will not be held accountable. A significant punishment here is therefore important to let others know that they cannot commit serious crimes abroad and then launder the proceeds of these crimes through the United States.

In his submission, the defendant asks the Court to consider the aftermath of his cancer diagnosis when deciding on his sentence. While a cancer diagnosis could be a mitigating factor, the defendant's cancer has responded to treatment and is currently in remission. It is therefore entitled to little weight here. In addition, the defendant's diagnosis should be weighed against other aggravating factors including the serious, complex, long-running nature of the crime and the harm to the victims. Weighing all these factors, a sentence within the 57 to 71 month Guidelines range is appropriate here. In addition, the defendant has agreed to forfeit $345,000, which should be included as part of his sentence.[2]

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Devon Lash
Joy Lurinsky
Assistant U.S. Attorney
(718) 254-6441

---

[2] With respect to restitution, the government has asked foreign law enforcement to contact the banks who were victimized in the scheme so that these banks can document their losses. The government has not yet received any information from foreign law enforcement in response to this request. The government will update the Court if it receives this information.