PP:LAB/LM
F. #2018R00550/OCEDETF# NY-NYE-875

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                         21-CR-208 (LDH)

ALEX LEVIN,
                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## **GOVERNMENT'S MOTIONS IN LIMINE**

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Lauren A. Bowman
Lorena Michelen
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

Preliminary Statement……………………………………………………………1

Background………………………………………………………………………2

Argument…………………………………………………………………………3

  I.    Evidence Concerning the Scope and Methods of the Charged Conspiracy, Uncharged Acts and Prior Bad Acts Is Admissible as Direct Evidence of the Charged Crimes or, in the Alternative, Pursuant to Fed. R. Evid. 404(b) ……...3

        A.    Legal Standard………………………………………………………...5

              1.    Use of Direct Evidence……………………………….………5

              2.    Use of 404(b) Evidence…………………………………..…..9

        B.    Discussion…………………………………………………………12

              1.    Evidence of the Defendant and CW-2's Relationship and Their Involvement in Illegal Schemes is Relevant and Admissible……13

              2.    Evidence of the Defendant and CW-1's Relationship, Including How They Met In Prison, is Relevant and Admissible..15

              3.    Evidence of the Defendant's Prior Securities Fraud Conviction is Relevant and Admissible…………………………16

              4.    Evidence of the Defendant's Failure to File Tax Returns From 2015 to 2017 is Relevant and Admissible…………………18

  II.   Defendant and Co-Conspirator Statements Are Admissible Pursuant to Rule 801(d)(2) When Offered by the Government…………………………………19

  III.  Defendant's Proffer Statements Are Admissible if the Defendant or Defense Counsel Open the Door……..………………………………………………...20

  IV.   The Defendant Should be Precluded from Discussing Possible Punishment……20

Conclusion………………………………………………………………………...22

PRELIMINARY STATEMENT

In advance of trial, which is scheduled to begin on June 3, 2024, the government respectfully submits the following motions in limine to: (1) admit certain categories of evidence as direct evidence of the charged crime or, in the alternative, pursuant to Federal Rule of Evidence 404(b); (2) admit co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2); (3) admit the defendant's proffer statements if the defendant or defense counsel open the door; and (4) preclude the defendant from discussing possible punishment. The government submits that these motions will help streamline the trial and focus on the central issues of dispute in this case. For the reasons set forth below, the Court should grant the government's motions.

BACKGROUND

This case arises out of a four-year-long bank theft and money laundering scheme that took place between March 2015 and October 2019 and resulted in the theft of tens of millions of dollars and property from safe deposit boxes at multiple banks outside of the United States, including in Ukraine, Russia, North Macedonia, Moldova, Latvia, Uzbekistan, Azerbaijan, and France.  In furtherance of this scheme, members of the conspiracy, operating in the Eastern District of New York and elsewhere, targeted foreign banks that appeared to lack strong security features and traveled to commit the heists in the foreign countries.  Members of the conspiracy posed as customers at the target banks and rented safe deposit boxes.  After gaining access to safe deposit box rooms, the conspirators used specialized medical equipment to take photographs of the inside of the locks of other customers' safe deposit boxes.  Using these photographs, the conspirators created duplicate keys for the safe deposit boxes in order to steal money and valuables from legitimate customers at the foreign banks.  As part of this scheme, members of the conspiracy stole millions of dollars and subsequently laundered some of those illegal proceeds to the United States.

The government expects the evidence at trial to show that members of the conspiracy, including the defendant Alex Levin – who was a resident of Brooklyn at all relevant times – assisted in laundering the proceeds of the unlawful scheme to the United States.  For example, around the time of various bank heists in Ukraine, a company used in furtherance of the unlawful scheme, wired to the defendant unlawful bank heist proceeds.  Specifically, on or about July 31, 2015, Glenport Merchants LLP ("Glenport Merchants"), a company with a Latvian bank account, wired $150,000 to the defendant.  Shortly thereafter, the defendant wired $144,727 to another member of the conspiracy who personally participated in the bank heists.

The defendant also used bank accounts in the United States, including accounts located in the Eastern District of New York, to purchase sophisticated camera equipment used in the thefts – including borescopes, which are small, specialized, medical grade cameras.  Notably, on October 28, 2015 – only four months after the $150,000 transfer to the defendant – Glenport Merchants wired $25,000 to Leman Management Group Inc. ("Leman"), a company controlled by one of the defendant's co-conspirators.  The day after, Leman wired $18,500 to Machida, Inc. ("Machida"), a medical company, for borescopes.  The defendant acted as a translator and broker for his co-conspirators when purchasing this equipment from Machida.

The government also expects the evidence at trial to show that the defendant assisted the conspiracy by obtaining locks and key blanks that were later used to conduct the bank heists.  Furthermore, the co-conspirators arranged some of their foreign travel in furtherance of this scheme through the defendant's wife's travel agency, where the defendant worked and assisted in running and maintaining the business.  For his role in this scheme, the defendant is charged in a two-count indictment (the "Indictment") with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and conspiracy to violate the Travel Act, in violation of 18 U.S.C. §§ 1952(a) and 371.

<u>ARGUMENT</u>

V.   Evidence Concerning the Scope and Methods of the Charged Conspiracy, Uncharged Acts and Prior Bad Acts Is Admissible as Direct Evidence of the Charged Crimes or, <u>in the Alternative, Pursuant to Fed. R. Evid. 404(b)</u>

The government submits that the following evidence is admissible against the defendant as direct evidence and/or 404(b) evidence of the defendant's knowledge, plan, lack of mistake and motive to engage in the charged conspiracy:

- Testimony about the nature and scope of the defendant's relationship with a co-conspirator ("CW-2"), including:

- that CW-2 had known the defendant for multiple years prior to the charged conspiracy;

- that CW-2 was involved in illegal schemes throughout the years that he knew the defendant and that the defendant was aware of some of these illegal activities; and

- that CW-2 and the defendant were involved in an illegal scheme selling and shipping cars and car parts from New York to Ukraine and other foreign countries.

- Testimony from CW-2 that the defendant was involved in selling stolen goods, including stolen ancient artifacts on behalf of other members of the conspiracy prior to the charged conspiracy.

- Testimony from CW-2 regarding the defendant's assistance – including during the years of the charged conspiracy – in procuring materials and goods that were sometimes later used by CW-2 to commit different crimes.

- Testimony about the nature and scope of the defendant's relationship with another co-conspirator ("CW-1"), including:

  - that they met while they were both in prison; and

  - corroboration regarding the illegal activities that the defendant was involved in with CW-2.

- Testimony and records about the defendant's prior securities fraud conviction.

4

- Testimony and records regarding the defendant's failure to file tax returns from 2015 to 2017, during key years of the charged conspiracy.

B.   Legal Standard

1.   Use of Direct Evidence

Evidence of uncharged acts, even uncharged acts that amount to criminal activity, is admissible as direct evidence of the crimes charged in the indictment.  See, e.g., United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989).  In Towne, the Second Circuit specifically identified three categories of uncharged criminal activity that constitute direct evidence of the charged offense:

> Evidence of uncharged criminal activity is not considered "other crimes" evidence under Fed. R. Evid. 404(b) if it satisfies one of these three requirements: (1) it "arose out of the same transaction or series of transactions as the charged offense," (2) it is "inextricably intertwined with the evidence regarding the charged offense," or (3) if it "is necessary to complete the story of the crime [on] trial."

Towne, 870 F.2d at 886 (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)); see also Carboni, 204 F.3d at 44; United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)..  On this basis, "the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.  Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."  Gonzalez, 110 F.3d at 941 (quoting United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir.1991)).  The Second Circuit has interpreted this category of evidence to include acts that provide necessary background or context for the charged crimes.  See United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide

5

the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) ("The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.") (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)).

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401. Relevant evidence generally is admissible, see Fed. R. Evid. 402, and there is a "very low standard for relevance."  United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008); see, e.g., United States v. Quattrone, 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry.").  In order to be relevant, the evidence "need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.'"  United States v. Kahale, 789 F. Supp. 2d 359, 381 (E.D.N.Y. 2009) (quoting United States v. Williams, 585 F.3d 703, 707 (2d Cir. 2009)).

Moreover, it is "well settled in the Second Circuit that where an indictment contains a conspiracy charge, '[a]n act that is alleged to have been done in furtherance of the alleged conspiracy' is considered to be 'part of the very act charged.'"  United States v. Barrett, No. 10-CR-809 (KAM), 2011 WL 6704862, at *4 (E.D.N.Y. Dec. 21, 2011) (quoting United

States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999)); see also Diaz, 176 F.3d at 80 (other bad acts evidence admitted to show how "drug conspirac[y] evolved, and how illegal relationships and mutual trust developed between co-conspirators"); Thai, 29 F.3d at 812 (stating that, in conspiracy cases, "uncharged acts may be admissible as direct evidence of the conspiracy itself").  Such acts are therefore inextricably intertwined with, and direct evidence of, the charged conspiracy and not subject to Rule 404(b).  See United States v. Matera, 489 F.3d 115 (2d Cir. 2007) (upholding admission of evidence of uncharged murders).

Uncharged conduct may be admissible even if it occurred prior to the charged conspiracy if it allows the jury to understand the origin of the defendant's participation in the charged conspiracy, as well as relationships between the co-conspirators.  See United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22, 2015) (finding that acts by co-conspirators prior to the start of the conspiracy elaborate the relationship between the defendants).

Moreover, the Second Circuit has explained that evidence of a defendant's prior assistance to a co-conspirator is relevant as background evidence and admissible as direct evidence of the conspiracy.  See United States v. Serrano, 640 F. App'x 94, 97-98 (2d Cir. 2016).  In Serrano, the Second Circuit held that the district court properly admitted evidence of the defendant's earlier assistance to a co-conspirator in selling stolen cargo because such evidence "inform[ed] the jury of the background of the conspiracy charged, "help[ed] explain how the illegal relationship between the participants in the crime developed" and "explain[ed] the mutual

trust that existed between the defendant and the co-conspirator.  Id. (internal quotation marks omitted).  Furthermore, such evidence "permitted the jury to understand why, when [the co-conspirator] and [the defendant] met […], [the co-conspirator] would feel comfortable offering to sell [the defendant] drugs that had just been stolen, while [the defendant] sufficiently trusted [the co-conspirator] to say that he "wanted in" and, therefore, quickly entered into the charged robbery conspiracy.  Id.

Likewise, as applicable in this case, evidence of the defendant's failure to file tax returns "is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy" and thus admissible as direct evidence and/or as Rule 404(b) evidence.  United States v. Black, No. 13-CR-316 (DLI), 2014 WL 5783067, at *4 (E.D.N.Y. Nov. 5, 2014) (citing United States v. Mitchell, 613 F.3d 862, 866 (8th Cir. 2010));see also United States v. Romero–Lopez, 695 F.3d 17, 24 n. 4 (1ˢᵗ Cir. 2012) ("As a general rule, failure to report income on tax returns is relevant evidence in a money laundering conspiracy case.").  In a money laundering case, "evidence of tax fraud is interrelated with and relevant to the defendant's knowledge, plan, lack of mistake and motive to engage in the charged conduct" particularly because a money laundering charge requires the government to "show that defendant knew the proceeds were obtained from illegal activity."  United States v. Barrett, 153 F. Supp. 3d 552, 571 (E.D.N.Y. 2015) (holding that tax fraud evidence was admissible as both direct evidence of a conspiracy and under Rule 404(b)).[1]  "The regular admission of evidence concerning tax fraud in money

---

[1]       The Second Circuit has held that tax fraud evidence is relevant as to the defendant's "intent and absence of mistake" and thus admissible under Rule 404(b).  United States v. Bergstein, 788 F. App'x 742, 745 (2d Cir. 2019);see also United States v. Kurland, No. 20-CR-306 (NGG), 2022 WL 2669897, at *7 (E.D.N.Y. July 11, 2022) (holding that, although inadmissible as direct evidence, failure to report income tax evidence was admissible under Rule 404(b) as evidence of criminal intent).

laundering and other fraud-related prosecutions counsels against a conclusion that the tax-related evidence would distract or confuse the jury." Id. at 570 (citing Black, 2014 WL 5783067, at * 4–5 and United States v. Watts, No. 09–CR–62, 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011)). Tax fraud evidence is relevant in showing "the defendant[]'s consciousness of guilt." United States v. Hatfield, 685 F. Supp. 2d 320, 324 (E.D.N.Y. 2010) (citing United States v. Hogan, 886 F.2d 1497, 1507 (7th Cir.1989)).

### 2.   Use of 404(b) Evidence

Alternatively, under Rule 404(b), evidence of a defendant's "other crimes, wrongs, or acts" is admissible when offered for any purpose other than the defendant's criminal propensity. See, e.g., United States v. Germosen, 139 F. 3d 120, 127 (2d Cir. 1998); United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). Rule 404(b) itself contains a non-exhaustive list of proper purposes for which "other act or crime" evidence may be admitted, including "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b); see also Levy, 731 F.2d at 1002. Although the government must explain "the purposes for which the evidence is sought to be admitted," the Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application. Levy, 731 F.2d at 1002 ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").

A party must satisfy three requirements in order for evidence of "other crimes, wrongs or acts" to be admitted under the rule. First, the evidence must be offered for a purpose other than to prove the defendant's bad character or criminal propensity. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (citing United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)). Second, the evidence must be relevant under Rules 401 and 402 and more probative than prejudicial in accordance with Rule 403. See Mickens, 926 F.2d at 1328; Levy,

731 F.2d at 1002.  Third, if the defendant requests a jury instruction as to the limited purpose for which the government's evidence is admitted, the court must furnish such an instruction.  See Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

        The Second Circuit repeatedly has held that evidence of uncharged crimes may be admitted at trial to establish the existence and evolution of a relationship of trust between coconspirators. See, e.g., United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) (upholding admission of evidence relating to the defendant's prior criminal activities with coconspirators in charged drug conspiracy as relevant evidence to inform jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed); United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").[2]  Such evidence is also admissible to corroborate the testimony of cooperating witnesses if the corroboration is "direct and the matter corroborated is significant."  See United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987)

---

[2]      Several Second Circuit decisions appear to analyze other acts evidence pertaining to the relationship of trust among co-conspirators under the rubric of Rule 404(b).  Others, however, have suggested that relationship of trust evidence, at least in conspiracy cases, is synonymous with direct proof of a charged conspiracy or evidence that completes the story of or provides crucial background to the charged offenses, and thus may be admitted without regard to Rule 404(b).  See, e.g., United States v. Moten, 564 F.2d 620, 628 (2d Cir. 1977) ("[P]roof of prior drug dealing by individual defendants with Brown at a time previous to commencement of the conspiracy charged was clearly admissible to show the basis for the existence of the conspiracy charged and the mutual trust which existed between Brown and his customers.  It was therefore admissible against all the defendants to show the nature and existence of the conspiracy charged."); United States v. Morillo-Vidal, 547 F. App'x 29, 30-31 (2d Cir. 2013) (testimony regarding other crimes was admissible because it was "relevant background information" that, inter alia, "explained [a co-conspirator's] relationship to his co-conspirator [] and his knowledge of [the co-conspirator's] role in a national drug conspiracy," evidence that qualifies as "highly probative when the charged conduct covers a conspiracy").

(internal quotation marks omitted).  This evidence is also admissible under Rule 404(b), as pertains here, where extensive cross-examination into a government witness's criminal history for impeachment purposes is anticipated, allowing the government to elicit the witness's testimony about such acts on direct examination so as to avoid the appearance that the government is concealing such purported impeachment evidence from the jury. See, e.g., United States v. Guerrero, 882 F. Supp. 2d 463, 492 (S.D.N.Y. 2011).

Evidence of prior, similar bad acts is also admissible under Rule 404(b).  A paradigmatic purpose for introducing evidence pursuant to Rule 404(b) is to address a "disputed issue of intent" that arises when a defendant does not claim that he "did not do the charged act at all," but claims instead that he "did the act innocently or mistakenly." United States v. Colon, 880 F.2d 650, 657 (2d Cir. 1989).  Evidence of prior, similar bad acts is relevant on this issue, because "the odds are that repeated acts of the same nature are not accidental." United States v. Pelusio, 725 F.2d 161, 168 (2d Cir. 1983) (internal quotation marks omitted).  The evidence is admissible under the "doctrine of chances," the recognition of that "logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all." United States v. Klein, 340 F.2d 547, 549 (2d Cir. 1965) (quoting J. Wigmore, Evidence, § 325 (3d ed. 1940)). See United States v. Danzey, 594 F.2d 905, 912 (2d Cir. 1979) (discussing the "doctrine of chances" underlying the admission of similar-act evidence to prove intent, noting that "similar results do not usually occur through abnormal causes; and the recurrence of a similar result in the form of an unlawful act tends to negative accident, inadvertence . . . or other innocent mental state and tends to establish to at least some extent the presence of criminal intent." (internal quotation marks omitted)).

Under Federal Rule of Evidence 403, otherwise admissible evidence may be excluded only where its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The fact that evidence is highly probative of guilt does not mean it is unfairly prejudicial. See, e.g., United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) ("Generally speaking, any proof highly probative of guilt is prejudicial to the interests of that defendant."). As the Supreme Court has instructed, "[w]hile an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, a fair trial does not include the right to exclude relevant and competent evidence." Zafiro v. United States, 506 U.S. 534, 540 (1993) (internal brackets, citations, and emphasis removed).

C. Discussion

The government submits that the evidence proffered below is admissible against the defendant as direct evidence and/or 404(b) evidence of, among other things, his awareness that (i) the money laundering proceeds were derived from unlawful activity and (ii) that the defendant participated in the conspiracy knowingly and voluntarily. Because the government bears the burden of proving the defendant's knowledge in joining the conspiracy and his awareness that the money transactions were derived from illegal activities, the proffered evidence is admissible to show "knowledge" and "absence of mistake or accident." The evidence at issue is highly probative of the charged conduct because it sheds light on the defendant's awareness of the illegal acts being done in furtherance of the charged conspiracy and his knowledge that the monetary transactions involved proceeds from unlawful activities. Likewise, the evidence is highly probative of the inference that the defendant's participation in the conspiracy was not unknowing or accidental and, as described below, is not substantially outweighed by any unfairly prejudicial effect.

1.     Evidence of the Defendant and CW-2's Relationship and Their
Involvement in Illegal Schemes is Relevant and Admissible

The government anticipates that CW-2 will testify at trial about the nature and scope of his relationship with the defendant, including: (i) that CW-2 had known the defendant for multiple years prior to the charged conspiracy; (ii) that CW-2 was involved in illegal schemes throughout the years that he knew the defendant and that the defendant was aware of some of these illegal activities; and (iii) that CW-2 and the defendant were involved in an illegal scheme selling and shipping cars and car parts from New York to Ukraine and other foreign countries. As explained above, such evidence is "plainly admissible" when it "explain[s] the development of the illegal relationship between the defendants and their co-conspirators and explains the mutual trust that existed between the co-conspirators (including the cooperating government witnesses)." Guerrero, 882 F. Supp. at 492 (S.D.N.Y. 2011), aff'd, 560 F. App'x 110 (2d Cir. 2014). Such background evidence is admissible "to show for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." Daly, 842 F.2d at 1388. Additionally, this evidence is highly probative of the defendant's knowledge of the circumstances surrounding the charged conspiracy – specifically, the fact that the defendant was engaged in another illegal scheme with CW-2 is highly probative of the defendant's awareness that he was moving the proceeds of illegal activities in the charged conspiracy.

The government also anticipates that CW-2 will testify, based on his first-hand knowledge and interactions with the defendant, about the defendant's involvement in selling stolen goods, including stolen ancient artifacts on behalf of other members of the conspiracy prior to the charged conspiracy. This evidence is inextricably intertwined with and necessary to complete the story of the charged conspiracy to show how the defendant came to move money

13

stolen from banks abroad for the conspiracy. It is also highly probative of the defendant's mental state when he agreed to join the conspiracy and it provides necessary context for the circumstances surrounding the events that led to the defendant to join the charged conspiracy.

Furthermore, the government anticipates CW-2 to testify about the defendant's assistance – including during the years of the charged conspiracy – in procuring materials and goods that were sometimes later used by CW-2 to commit different crimes, including items used for the illegal car scheme mentioned above. This evidence of the defendant's prior assistance to a co-conspirator is relevant and admissible as direct evidence of the conspiracy to show how CW-2 and the defendant worked together and trusted each other. See Serrano, 640 F. App'x at 97-98. Such evidence is particularly relevant and probative in a case like this one, where the government is required to prove that the defendant knew that the transaction(s) at issue were derived from an illegal activity and the defendant will likely advance the defense that he lacked the necessary knowledge that the money he moved was the proceeds of illegal activity. See, e.g., Pipola, 83 F.3d at 565-66 (evidence that the defendant and his coconspirators made usurious loans, as well as other uncharged crimes of armed robbery, burglary and using stolen and counterfeit credit cards, admissible to explain the evolution of the defendant's relationship with his co-conspirators in robbery conspiracy trial).

All of the foregoing evidence is direct proof and completes the story of, and provides essential background to, the charged crimes. This evidence provides critical context and background for the conspiracy charged in the indictment and is inextricably intertwined to explain the development of the relationship between the conspirators and why CW-2 trusted the defendant to participate in the bank heist conspiracy. Furthermore, such testimony is necessary to establish plan, intent, knowledge and absence of mistake with regard to the specific conduct

comprising the charged crimes.  See e.g., United States v. Graziano, 558 F. Supp. 2d 304, 319

(E.D.N.Y. 2008) (holding that prior interactions between the defendant and the victims,

including an alleged assault, were admissible as background evidence to show the circumstances

surrounding the events or to furnish an explanation of the understanding or intent with which

certain acts were performed).

      As such, the evidence is not "crime[s], wrong[s], or other act[s]" subject to

Federal Rule of Evidence 404(b).  Even assuming arguendo that it constitutes such evidence, the

proffered evidence is admissible under Rule 404(b) to show knowledge, intent, and, absence of

mistake, including to explain the relationships of trust between the defendant and his co-

conspirators and to demonstrate that he did not accidentally conduct monetary transactions with

bank heist money and knew that it was derived from illegal activity based on his history of

repeatedly engaging in illegal schemes with CW-2.  Accordingly, even if the evidence of

uncharged acts is not admitted as direct evidence of the charged crimes, such evidence should be

admitted pursuant to Rule 404(b).

      2.   Evidence of the Defendant and CW-1's Relationship, Including How They
           Met In Prison, is Relevant and Admissible

      The government anticipates that CW-1, a co-conspirator in the charged crimes,

will testify that he met the defendant approximately 20 years ago while they were both

incarcerated at the Metropolitan Correctional Center and that he developed a friendship with the

defendant throughout those decades leading to the charged conspiracy.  Furthermore, the

government anticipates that CW-1 will testify, based on his first-hand knowledge, about the

scope of the defendant's relationship with CW-2, including how CW-2 and the defendant were

involved in illegal activities prior and during the time of the charged conspiracy.  This testimony

will corroborate CW-2's testimony and such corroboration is admissible at trial to establish the

existence and evolution of a relationship of trust between co-conspirators.  See, e.g., Williams, 205 F.3d at 33-34 (upholding admission of evidence relating to the defendant's prior criminal activities with co-conspirators as relevant evidence to inform jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed).

For the same reasons set forth above, this evidence is relevant and admissible to explain the defendant and the co-conspirators mutual trust and to complete the story of the charged crimes.  Such evidence is also admissible under Rule 404(b), as it is highly probative of the defendant's intent and knowledge in connection with the charged conspiracy, especially to rebut the defendant's claim of innocent association with co-conspirators and that he did not know the transactions he conducted were the proceeds of illegal activity.

3.  Evidence of the Defendant's Prior Securities Fraud Conviction is Relevant and Admissible

The government expects to enter evidence at trial related to the defendant's prior conviction involving using a manipulative and deceptive device.  Specifically, on June 16, 1999, the defendant was charged in the Eastern District of New York with the following five counts: (i) one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (ii) two counts of manipulative and deceptive devices, in violation of 15 U.S.C. § 78j; and (iii) two counts of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). See, e.g., United States v. Jackson, 792 F. App'x 849, 853-854 (2d Cir. 2019) (404(b) evidence of prior bank fraud conviction was admissible in wire fraud conspiracy case to show knowledge or intent because the prior conviction was relevant to show the defendant's familiarity with complex financial transactions and  because it rebutted the defendant's claim that he lacked necessary knowledge or intent).  On February 14, 2002, the defendant was sentenced to two years

imprisonment, after he pled guilty to one count of manipulative and deceptive devices, in violation of 15 U.S.C. § 78j.[3]

This evidence is "necessary to complete the story of the crime on trial," Carboni, 204 F.3d at 44, because this evidence is relevant to show the defendant's intent and knowledge about the charged conspiracy.  Since the government's burden of proof requires establishing that the defendant knew that the relevant funds involved proceeds from an illegal activity, the fact that the defendant was involved in prior financial crimes is permissible under Rule 404(b).  Moreover, in addition to demonstrating intent and motive, the evidence will demonstrate knowledge and absence of mistake.

The government submits that the probative value of this evidence substantially outweighs any prejudice under Rule 403.  This evidence is certainly prejudicial, but not "unfairly" so.  See Fed. R. Evid. 403.  This evidence is not offered to show criminal propensity or to inflame the jury; rather, the evidence is offered for the permissible purpose of establishing an element of the crime through evidence of the defendant's intent, knowledge, and absence of mistake.  The prejudice arising from the introduction of such evidence is minimal, given that the prior conviction does "not involve conduct any more sensational or disturbing" than the offenses charged.  United States v. Pitre, 960 F.2d 1112, 120 (2d Cir. 1992); see also United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) ("Moreover, we find no undue prejudice under Rule

---

[3]     Due to the age of the conviction, the government is in the process of gathering more information and obtaining from the archives the records of this prior conviction.  If necessary, the government can supplement this motion once it obtains such records. Furthermore, the government is in the process of requesting records of a Securities Exchange Commission ("SEC") civil suit that was previously filed against the defendant in the Southern District of New York.  The government will produce these materials to the defense as soon as it obtains such records.  The government contemplates filing a supplemental motion seeking to admit these records at trial as direct evidence of the charged offenses or, in the alternative, pursuant to Rule 404(b).

403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction.").  In addition, any potential prejudice can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the 404(b) evidence to the purpose for which it is offered, both at the time the evidence is received and during the Court's final charge. See, e.g., United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).

       4.   Evidence of the Defendant's Failure to File Tax Returns From 2015 to 2017 is Relevant and Admissible

The government anticipates that evidence at trial will establish that the defendant failed to file taxes on relevant years of the charged conspiracy – specifically, from 2015 to 2017. Pursuant to 26 U.S.C. § 6103(i)(4)(A)(i), protected tax information may be introduced at a federal criminal trial "if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party."  The government seeks to admit evidence that the defendant failed to file tax returns from 2015 to 2017, including by introducing evidence of Internal Revenue Services ("IRS") account transcripts for the relevant years.  If this motion is granted, the government will introduce this evidence through the testimony of an IRS witness.

As discussed in the legal analysis above, the defendant's tax filings provide direct evidence that the defendant sought to conceal his involvement in the charged conspiracy.  The defendant's failure to file tax returns during relevant years of the conspiracy – while filing taxes for other years – provides direct evidence that the defendant understood that the money he received as part of his involvement in the conspiracy was not legitimate income.  In the alternative, for the reasons explained above, this evidence is admissible pursuant to Rule 404(b) because it is highly probative of the defendant's intent, knowledge, and absence of mistake.

VI.     Co-Conspirator Statements Are Admissible Pursuant to Rule 801(d)(2) When Offered
        <u>by the Government</u>

        The government expects to offer evidence – through witness testimony and

electronic communications – of statements made by the defendant and by his co-conspirators,

including conversations between co-conspirators in the defendant's presence.  All of these

statements were made by the defendant or his co-conspirators, in furtherance of the charged

conspiracy.  These statements are relevant and probative of the charged conduct, will corroborate

the testimony of cooperating witnesses and are admissible as non-hearsay statements of party

opponents and as statements of co-conspirators in furtherance of the conspiracy.  At trial, the

government will lay the appropriate foundation for these statements through witnesses in

accordance with the legal precepts and precedents set forth below.

        Pursuant to Federal Rule of Evidence 801(d)(2)(E), a statement offered against an

opposing party and "made by the party's co-conspirator during and in further of the conspiracy"

is not hearsay.  "The law is well settled within this circuit that declarations that are otherwise

hearsay may nevertheless be provisionally admitted, subject to connection of the defendant with

the conspiracy alleged, as long as the trial court is ultimately satisfied that the participation of the

defendant against whom the declaration is offered has been established by a fair preponderance

of the evidence independent of the hearsay utterances."  <u>United States v. Cambindo Valencia</u>,

609 F.2d 603, 630 (2d Cir. 1979).  "To admit a statement under the co-conspirator exception to

the hearsay definition, a district court must find two factors by a preponderance of the evidence:

first, that a conspiracy existed that included the defendant and the declarant; and second, that the

statement was made during the course of and in furtherance of the conspiracy."  <u>United States v.</u>

<u>Gigante</u>, 166 F.3d 75, 82 (2d Cir. 1999).  Moreover, out-of-court statements by co-conspirators

that "provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust

and cohesiveness, or inform each other as to the progress or status of the conspiracy" are admissible.  Id.

VII.    Defendant's Proffer Statements Are Admissible if the Defendant or Defense Counsel Open the Door

In October  2021, the defendant met with the government pursuant to a proffer agreement to persuade the government to dismiss the charges, which the government ultimately did not do.  The government does not intend to introduce in its case-in-chief the statements made by the defendant on that day.  However, as stipulated in the proffer agreement signed by both parties, these statements are admissible at trial (i) as substantive evidence to cross-examine the defendant, should he testify at trial and (ii) as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made at trial, by or on behalf of the defendant.  The government hereby gives notice to the defendant and the Court that it may seek to introduce the defendant's proffer statements if defense counsel or the defendant contradict any statements the defendant made during his proffer session with the government.

VIII.    The Defendant Should be Precluded from Discussing Possible Punishment

The Court should preclude the defendant from referencing at trial any discussion of the defendant's possible punishment or collateral consequences of conviction.  Evidence regarding possible consequences of conviction is not relevant.  See Fed. R. Evid. 401.  The defendant's punishment is not a fact "of consequence" to be determined at trial.  Therefore, any evidence of those issues is not relevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  Id.  Indeed, jurors are routinely instructed not to consider a

defendant's punishment in determining a defendant's guilt.  See generally Sand, et al., Modern Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

Courts have repeatedly precluded evidence of the potential sentence a defendant faces on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the jury.  See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of a potentially harsh sentence because such evidence "would have necessitated an unwarranted departure from the fundamental division of responsibilities between judge and jury.").  In short, guilt should determine punishment, not the other way around.  See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent.").  Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct."  Id. at 616.

Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.

CONCLUSION

For the reasons set forth herein, the Court should grant the government's motions in limine.

Dated:    Brooklyn, New York
           April 17, 2024

BREON PEACE
United States Attorney
Eastern District of New York

By:    /s/
Lauren A. Bowman
Lorena Michelen
Assistant United States Attorneys
(718) 254-7000

cc:    Clerk of Court (LDH) (via ECF)
       Defense Counsel (via ECF)