UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------

UNITED STATES OF AMERICA,

      - against -

ALEX LEVIN,

                     Defendant.
-------------------------------------------------

21-CR-208 (LDH)
NOTICE OF MOTION

PLEASE TAKE NOTICE, that on all prior papers and proceedings herein and

the annexed brief, defendant will move this Court, at a time and place to be set by the

Court, for an order, pursuant to the Federal Rules of Criminal Procedure Rules 29 and

33 setting aside the verdict and/or granting a new trial on the grounds (a) that

defendant was denied his Sixth Amendment right to confront witnesses against him,

(b) the prosecution used false testimony to obtain the conviction and (c) the evidence

was insufficient to sustain a conviction.

                     Respectfully submitted,

                     /s/ Albert Y. Dayan
                     Albert Y. Dayan, Esq.
                     80-02 Kew Gardens Rd., # 902902
                     Kew Gardens, N.Y. 11415
                     (718) 268-9400

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------

UNITED STATES OF AMERICA,

       - against -                        <u>21-CR-208 (LDH)</u>

ALEX LEVIN,

                    Defendant.
-----------------------------------------------------


DEFENDANT'S BRIEF IN SUPPORT OF HIS
RULE 29 AND RULE 33 POST-VERDICT
MOTION(S) TO SET ASIDE THE VERDICT
AND/OR FOR A NEW TRIAL.

Albert Y. Dayan, Esq.
Attorney for Defendant
80-02 Kew Gardens Rd., # 902
Kew Gardens, NY. 11415

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................. 1.

POINT ONE............ DEFENDANT WAS DENIED HIS RIGHT
                   TO CONFRONT WITNESSES AGAINST HIM.............. 1

Background ........................................................................................................ 1

DISCUSSION ..................................................................................................... 3

POINT TWO ................. THE GOVERNMENT KNOWINGLY
                        USED FALSE TESTIMONY TO
                        OBTAIN THE CONVICTION........................... 5

The Testimony..................................................................................................... 5

DISCUSSION ...................................................................................................... 7

POINT THREE ...... THE EVIDENCE WAS INSUFFICIENT TO
                   SUSTAIN A CONVICTION ON EITHER
                   CONSPIRACY COUNT : EVIDENCE THAT
                   DEFENDANT "AGREED" WITH ANOTHER
                   TO COMMIT MONEY LAUNDERING AND/OR
                   "AGREED" WITH ANOTHER TO VIOLATE
                   THE "TRAVEL ACT" WAS LACKING…................. 9

CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page

United States Constitution

Sixth Amendment ………………………………………………………….    1, 3, 4

Cases

*Crawford v. Washington*, 541 U.S. 36 (2004) …………………………………..    3, 4

*Davis v. Alaska*, 415 U.S. 308 (1974) .......................................................................3

*Dutton v. Evans,* …………………………………………………………………    4

*Mooney v. Holohan*, 294 U.S. 103 (1935 ……………………………………    8

*Napue v. Illinois, 360* U.S. 264 (1959)......................................................................8

*Shih Wei Su v. Filion*, 355 F.3d 119 (2d Cir. 2003) ……………………………    8

*U.S. v. Burden*, 600 F.2d 204 (2d Cir. 2010) ...........................................................4

U.S. v. Freeman, 650 F.3d 673 (7th Cir 2011) ...........................................................8

*U.S. v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) ……………………………..    9

United States Code

18 U.S.C. § 371 ......................................................................................................... 1

18 U.S.C. § 1952 ....................................................................................................... 1

18 U.S.C. 1956(c)(7)(B)(iii) ..................................................................................1, 3

18 U.S.C. § 1957 ....................................................................................................... 1

Federal Rules of Criminal Procedure

Rule 26.1 ………………………………………………………………………    1, 2

## INTRODUCTION

Defendant was found guilty, by jury verdict, on both counts of an indictment charging him with conspiracy to commit money laundering, 18 U.S.C. § 1957, and conspiracy to violate the travel act, 18 U.S.C. §§ 371, 1952. He now moves, post verdict, pursuant to Rules 29 and 33, to set aside the verdict and/for a new trial, on both counts, on the grounds that (A) he was denied his Sixth Amendment right to confront and cross-examine a witness against him on a critical issue of the case, (B) that the government knowingly used false testimony to obtain the conviction and (C) that the evidence was insufficient to sustain a conviction.

### POINT ONE

### DEFENDANT WAS DENIED HIS RIGHT
### TO CONFRONT WITNESSES AGAINST HIM.

<u>Background</u>

One of the elements of § 1957 money laundering is that the funds transacted were, in fact, derived from a "specified unlawful activity." Here, the indictment alleges that the "specified unlawful activity" from which the finds were derived was "fraud, or any scheme or attempt to defraud, by or against a foreign bank...," 18 U.S.C. 1956(c)(7)(B)(iii), and the acts which allegedly constituted that unlawful activity were the breaking into and stealing the contents of safe deposit boxes in banks in Ukraine, Russia, Moldova, Latvia, Uzbekistan and Azerbaijan.

To meet its burden of proving this element of § 1957 the government had to establish two things, (a) that the acts as alleged in the indictment constituted a "specified unlawful activity," i.e., fraud against a bank, and (b) that the funds involved in the transactions were derived from the acts alleged in the indictment.

By letters dated June 3 and June 18, 2024, (ECF 128, 134), because the nefarious acts in issue were carried out in Ukraine and other foreign jurisdictions, the government sought,

pursuant to Federal Rules of Criminal Procedure Rule 26.1, to have the Court decide, as an issue of foreign law, the question of whether the acts as alleged in the indictment constituted "fraud, or any scheme or attempt to defraud, by or against a foreign bank...," under the laws of Ukraine, Russia, Moldova, Latvia, Uzbekistan and Azerbaijan. * And, if so, instruct the jury that "as a matter of law, the [acts] alleged in the indictment constitutes a violation of the laws of Ukraine, Russia, Moldova, Latvia, Uzbekistan and Azerbaijan, ... and thus qualifies as a "specified unlawful activity." "

In support of their motion the prosecution proffered the affidavit of a purported expert "in Eastern Europe and former Soviet Union republics," "an American lawyer who specializes in criminal, regulatory and sanctions legal work involving Eastern Europe and, specifically, the countries comprising the former Soviet Union." (ECF 134-1). And, posited that "the Court may rely upon [the expert's] affidavit to determine that the laws of Ukraine, Russia, Moldova, Latvia, Uzbekistan, and Azerbaijan prohibit fraud, schemes and attempts to defraud banks and instruct the jury, as requested by the government, that these crimes constitute "specified unlawful activity" as a matter of law." The defense objected to this mode of proceeding "urg[ing] that the Court order a hearing at which the Government could provide the Court with any pertinent foreign statute or case law and any supportive expert testimony, *subject to cross-examination*." (Emphasis added.) (ECF 132). The Court did not order a hearing, did not take any additional evidence or provide for cross examination. The Court did, however, accede to the government's

———--------------------------
\* Federal Rules of Criminal Procedure Rule 26.1 - Issues of foreign law are questions of law, but in deciding such issues a court may consider any relevant material or source—including testimony—without regard to the Federal Rules of Evidence.
Although the Rule allows the Court to disregard the Rules of Evidence the Court can not disregard Constitutional requirements.

2

request that the Court rely on the government's expert's affidavit alone in making the crucial

determination that the alleged criminal acts qualified as "specified unlawful activity" under the

laws of the specific foreign countries and so instruct the jury. * Thus, this crucial aspect of an

element of the crimes charged was decided by the Court, in reliance on nothing more than the

affidavit of the government's "expert" witness.

Such decision denied defendant his right to confront the witnesses against him under the

Sixth Amendment.

## DISCUSSION

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him." "The main and essential purpose of confrontation is to secure for the opponent the

opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). In *Crawford v.

Washington*, 541 U.S. 36, 53-54, 59 (2004), the Supreme Court held that the Confrontation

Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who

did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior

opportunity for cross-examination." The Court distinguished between testimonial and

non-testimonial hearsay, holding that only "testimonial" statements cause the declarant to be a

---------------------

\*      The relevant portion of the charge given was -"In this case, the government has alleged
that the conspiracy concerned property derived from "offenses against one or more foreign
nations involving fraud, and one or more schemes and attempts to defraud, by and against one or
more foreign banks, in violation of the laws of the Ukraine, Russia, North Macedonia, Moldova,
Latvia, Uzbekistan, Azerbaijan, and France, as defined in Title 18, United States Code, Section
1956(c)(7)(B)(iii)." I instruct you, as a matter of law, that this qualifies as a "specified unlawful
activity."

3

"witness" within the meaning of the Confrontation Clause. *id.* at 51. The Court provided guidance as what type of statements constitute "'testimonial' statements": (1) "ex parte in-court testimony or its functional equivalent- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *id* at 51-52.

Clearly, the signed, formalized affidavit here, obviously made for use at trial instead of live testimony subject to cross-examination, proffered by the government, falls within *Crawford's* prohibition. *Dutton v. Evans*, 400 U.S. 74 (1970), at 94 (Harlan, J., concurring in result) (the "paradigmatic evil the Confrontation Clause was aimed at" was "trial by affidavit") ; *U.S. v. Burden*, 600 F.2d 204, 225 n.7 (2d Cir. 2010) (Affidavits, ... are quintessential traditional testimonial materials that fit comfortably within the "core class" described by *Crawford.*) As such the affidavit in issue was inadmissible for the purpose it was offered and accepted.

Accordingly, the affidavit in question was inadmissible and the Court's reliance theron deprived defendant of his Sixth Amendment right to confront witnesses against him. The evidence was insufficient to sustain a conviction.

4

POINT TWO

## THE GOVERNMENT KNOWINGLY
## USED FALSE TESTIMONY TO
## OBTAIN THE CONVICTION.

<u>The Testimony</u>

The only direct and most highly prejudicial evidence put before the jury that defendant

Levin had intentionally participated in the money laundering conspiracy, i.e., that he had *agreed*

with another to have a portion of Ellison's share of the proceeds from a bank "heist" wired to his,

Levin's, account was the testimony of cooperating witness Cooper that:

> A.  [Ellison] explained to me that he couldn't have the money sent to him
> because he did not have a business account, and he could not open his personal
> account. *So he had previously agreed with Alex Levin that Levin would receive
> the money to his account for a certain percentage. (Emphasis added.)* (T404).

But, Ellison, also a cooperating prosecution witness, testified earlier, to the contrary, that he had

not entered into such an agreement with Levin, that he never discussed the wire of $150,000.00

with Levin before the money was sent and that the concept of sending the money to Levin's

account was Cooper's alone.

Ellison testified:

> Q.  And so your testimony, or your truth, as you called it yesterday, that the
> wire of $150,000.00 to Levin's account was Cooper's initiative, Cooper's
> decision and Cooper's directive, correct?
>
> A.  Yes. (T180)
>
> Q.  And you never discussed that wire of $150,000.00 before it was sent
> with Alex Levin; is that your testimony: is that your testimony?
>
> The Court:  Counsel. hold on a moment. Before it was sent to Mr. Levin?
>      Before or after?
>
> Mr. A. Dayan:  Before it was sent to Mr. Levin.

5

The Court: To Mr. Levin.

Mr. A. Dayan: To Levin.

A. No. I did not discuss. I did not. No. (T180.)

Q. And your testimony to this jury is that this man, [Cooper], on his own, told you that he was going to send the money to you through Alex Levin, correct?
A. Yes.

* * *

Q. Your testimony to this jury, that you never asked this man. [Cooper], to wire you the money to Alex Levin's account?

The Court: Correct?

A. Correct. (T159)

Cooper testified as well that to carry out the scheme supposedly agreed to between

Ellison and Levin, Ellison had directed Cooper to send the $150,00.00 to Levin's account and

provided Cooper with Levin's account information.

Cooper testified:

Q. And I am asking you specifically for the $150.000.00 wire, that you used Alex Levin's account in the United States to transfer the money to, that belonged to [Ellison]. Isn't it true, that it was at [Ellison's] direction, not yours, to send [Ellison's] share of the money to Alex Levin's account?

A. Yes.

* * *

Q. That it was [Ellison[]] who gave you Alex Levin's bank account number?

A. Yes.

Q. It was [Ellison] who told you how much to send to Alex Levin?
A. Yes. * * * (T449-450).

6

But, Ellison's testimony again belied that of Cooper.

Ellison testified:

> Q. And so your testimony, or your truth, as you called it yesterday, that the wire of $150,000.00 to Levin's account was Cooper's initiative, Cooper's decision and Cooper's directive, correct?
> A. Yes. (T180),
>
> Q. Mr. Ellison, did you provide any bank account information to [Cooper].
> A. No. (T134)
>
> Q. Do you know, how did Mr. Cooper receive the wiring instructions to Mr. Levin's account for that $150,000 Transfer?
> A. No.
>
> Q. And your testimony to this jury is that this man, [Cooper], on his own, told you that he was going to send the money to you through Alex Levin, correct?
> A. Correct.
>
>     * * *
> Q. Your testimony to this jury, that you never asked this man, [Cooper], to wire you the money to Alex Levin's account?
> A. Yes.
>
>     * * *
> A. Correct. (T159)
>
> Q. And you testified yesterday that it was Mr. Cooper who had told you how he was going to get you the money through Mr. Levin's account, correct?
> A. Yes. (T179).
>
> Q. Do you know, how did Mr. Cooper receive the wiring instructions to Mt. Levin's account for that $150,000 transfer?
> A. No.

### DISCUSSION

Both Cooper and Ellison were self-proclaimed members of the alleged money laundering conspiracy who testified for the government pursuant to cooperation agreements. As such they

7

had been interrogated repeatedly by agents and prosecutors and "prepared" for their trial

testimony by prosecutors. It is inconceivable that the prosecution had not questioned its

witnesses closely concerning their roles as well as Levin's role in the conspiracy. That being so,

*the prosecution must have known or should have known* that Cooper's testimony - that Ellison

had told him that "he had previously agreed with Alex Levin that Levin would receive the

money to his account for a certain percentage;" that "it was at [Ellison's] direction, not

[Cooper 's] to send the $150,00.00 to Levin's account" and that "it was [Ellison[] who gave you

[Cooper] Alex Levin's bank account number"- was false or likely false and diametrically

opposed to that of Ellison.

     Yet, the prosecution put this false testimony before the jury, failed to correct it and

obviously did not investigate it to determine its truth or falsity before eliciting it. This denied

defendant due process.

     For many years it has been the established law of the United States that a conviction

obtained through testimony the prosecutor knows to be false is repugnant to the Constitution.

*Shih Wei Su v. Filion*, 355 F.3d 119, 126 (2d Cir. 2003), citing *Mooney v. Holohan,* 294 U.S. 103,

112 (1935). Under well-established principles of due process, the prosecution cannot present

evidence it knows is false and must correct any falsity of which it is aware in the evidence it

presents, even if the false evidence was not intentionally submitted. *Napue v. Illinois,* 360 U.S.

264, 269 )1959). It is also the case that "when the government learns that part of its case may be

inaccurate, it must investigate" to learn where the truth lies to avoid presentation of false

testimony. *United States v. Freeman,* 650 F.3d 673, 680 (7th Cir. 2011. And, where, as here, the

prosecution "knew or should have known" of the falsity of the testimony the conviction must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *U.S. v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991).

Certainly it cannot reasonably be argued that Cooper's demonstrably false testimony at issue could not have affected the judgment of the jury. Accordingly, the conviction should be set aside or a new trial granted

POINT THREE

THE EVIDENCE WAS INSUFFICIENT TO
SUSTAIN A CONVICTION ON EITHER
CONSPIRACY COUNT : EVIDENCE THAT
DEFENDANT "AGREED" WITH ANOTHER
TO COMMIT MONEY LAUNDERING AND/OR
"AGREED" WITH ANOTHER TO VIOLATE
THE "TRAVEL ACT" WAS LACKING.

Money Laundering Conspiracy

The only purported evidence supporting the notion that defendant had "agreed" with another to commit money laundering was the testimony of cooperating witness Cooper. He claimed that:

> "[Ellison] explained to me that he couldn't have the money sent to him because he did not have a business account, and he could not open his personal account. *So he had previously agreed with Alex Levin that Levin would receive the money to his account for a certain percentage." (Emphasis added.)* (T404).

But, as discussed above, Point Two, Ellison, also a cooperating government witness, unequivocally contradicted Cooper's testimony concerning the supposed "agreement" between defendant Levin and Ellison. Ellison swore, under oath, that he had not entered into such an agreement with Levin, that he never discussed the wire of $150,000.00 with Levin before the

9

money was sent and that the concept of sending the money to Levin's account was Cooper's alone. See Ellison's testimony set out in Point Two above.

Moreover, Cooper's testimony that Ellison had told him, out of court, of the supposed "agreement" between Levin and Ellison was inadmissible hearsay. For, even if Ellison' statement to Cooper was deemed to be a statement against Ellison' penal interest, it was inadmissible since Ellison, the declarant, Ellison was available and indeed, did testify.

Accordingly, the only testimony as to a culpable "agreement" on Levin's part to commit the charged money laundering is utterly without evidentiary worth.

"Travel Act" Conspiracy

Count Two of the indictment alleges a conspiracy to use "cellular telephones with the intent to promote, manage, establish, carry on and facilitate the promotion, management and carrying on of an unlawful activity, to wit, the crime charged in Count One." Count One charges, as amended, Conspiracy to Commit Money Laundering in violation of U.S.C. 1957(a).

Obviously then, to be sufficient to sustain a conviction on this count there must be proof, beyond a reasonable doubt, that defendant "agreed" with another to use a cellular telephone to promote, etc., the money laundering conspiracy charged in Count One. There was no testimony supporting such requirement.

CONCLUSION

For the reasons set out above, this motion should in all respects, be granted.

Respectfully submitted,

*Albert Y. Dayan*

Albert Y. Dayan