

Myers & Galiardo, LLP | 52 Duane Street, 7Fl., New York, NY 10007 | 212-986-5900 | www.citylaw.nyc

<u>BY ECF</u>                                                            September 1, 2025
The Hon. LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United states v. Alex Levin, et al.
21-CR-208 (LDH)

Your Honor:

Trial counsel Albert Dayan filed a Rule 29 and Rule 33 post-verdict motion as well as a Reply to the Government's response to that motion. On February 18, 2025 present counsel filed a motion concerning ineffective assistance of counsel contesting the fact that trial counsel failed to file a suppression motion and did not object to the "Conscious Avoidance" jury charge among other issues.

Trial Counsel's initial motion following the verdict addressed certain credibility issues surrounding the witnesses presented before the jury.  Most recently, on August 18, 2025 counsel of record served a letter on the prosecution concerning what the defense outlined as potential Brady issues. As the Court is made aware through this letter under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, we previously asked the Government to respond to its obligations. That obligation continues throughout this litigation which is favorable to the accused and is material either to guilt or to punishment and that is known to the Government. On August 28, 2025 counsel received an email responding to our Brady request and received the following response:  "Thank you for your letter. We read your letter and can confirm we are not aware of that information or its accuracy."

We now appeal to this Court to consider the facts we have raised in our Brady letter dated August 18, 2025 included here as Exhibit A.

Included in that letter to the Government is a request to investigate further the Government's central witness for allegations of immigration fraud and marriage fraud.  Bill Ellison (AKA Alex Kapitonov) changed his name four

different times to avoid arrest and prosecution for various crimes in various countries. His immigration paperwork and eventual approval to be a United States citizen was prepared by an attorney who committed over 25,000 fraudulent citizenship applications and was prosecuted for his crimes and served time in federal prison for immigration fraud. Ellison claimed during his interviews with the Government he had not committed immigration fraud. We believe the Government never investigated his claims. Just as the Government would conduct a background check for one's criminal record they have a duty to investigate someone's citizenship when it is abundantly clear the witness has been evading law enforcement in various ways.

Additionally, Mr. Ellison claimed on the witness stand (trial transcript p.55 lines 7-10) that he had been married for 30 years. In point of fact just before serving time in prison he married his sister in law. She became a citizen as a result of the marriage to Mr. Ellison. Shortly after he served his prison term Ellison divorced his sister in law and married his present wife Anna Shcheglova who is the sister of his first "wife". The marriage paperwork was prepared by the same attorney who went to federal prison based on false immigration paperwork. Noteworthy, the Government was well aware of Anna Shcheglova (Ellison's wife) as the discovery pointed to the opening of bank accounts and wiring of stolen funds to the United States by Ms. Shcheglova. In the normal course of being diligent in dealing with Mr. Ellison and Ms. Shcheglova it seems incumbent upon the prosecution to verify their immigration and marital status just as you would their criminal backgrounds.

We bring these issues to the Court's attention in light of the pending motions for a new trial prepared by Attorney Dayan as well as the fact that all of these issues may have had an effect on the cross examination and eventual verdict. It was evident during witness testimony that not one of the Government's witness could testify that Alex Levin knew of the plan to rob banks. The Government's case was a circumstantial evidence case supported upon witnesses who, by all accounts, had dishonorable backgrounds. Had the Government diligently checked the immigration and marital background of the witness the defense and eventually the jury would have been more informed about the lack of credibility of the Government's witnesses.

Respectfully Submitted,
/s/Matthew D. Myers
Counsel for Mr. Alex Levin

Cc: AUSA Lauren A. Bowman
    AUSA Lorena Michelen

# EXHIBIT A



Myers & Galiardo, LLP | 52 Duane Street, 7Fl., New York, NY 10007 | 212-986-5900 | www.citylaw.nyc

August 18, 2025

<u>United States v Alex Levin, 21 CR 208 (LDH)</u>

Dear AUSA's Michelen, AUSA Larkin, and AUSA Bowman:

Pursuant to Court Order (Document 12 filed 04/20/21) and the Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act which confirms Government disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, we ask the Government to respond to its obligations which is favorable to the accused and is material either to guilt **or to punishment** and that is known to the Government.

This is a follow-up letter to our phone call last week.  I referenced what the Defense considers to be <u>Brady</u> material in our prior conversation.   We are asking your office to investigate the following information concerning the veracity of two trial witnesses, namely Bill Ellison (AKA Alex Kapitonov), and Val Cooper.

In light of the fact that Mr. Levin's conviction was based upon the credibility of these two witnesses and the fact that neither witness could state under oath that Mr. Levin knew of the plan "to rob banks"  we view the materials not provided the Defense under <u>Brady</u> to be pivotal.  Additionally, in conversations between Mr. Levin and Mr. Ellison (AKA Kapitonov) according to the 302's and individuals who were interviewed during trial preparation (specifically Individual #1) turned over to the defense, "Mr. Levin remained 'neutral' and did not relay the scope of what he knew (or did not know)."  "Individual 1" maintained that Val Cooper is the "only one who knew the entire scope of the scheme."  Under these facts the credibility of the two trial witnesses became more relevant in obtaining a conviction. In the February 27, 2024 communication by your office to Mr. Dayan pursuant to <u>Brady v Maryland</u>, 373 U.S. 83 (1963) your communication fails to mention the following items:

**Witness: Bill Ellison (AKA Alex Kapitonov)**

Mr. Kapitonov stated in a January 25, 2021 interview with the FBI (302) on page 7 of 9 that he had "not engaged in immigration fraud." The Defense is asking if your office or the agents involved in this matter investigated this statement? The Defense has a good faith basis for asking such question in light of the fact that Mr. Ellison (AKA Kapitonov) was represented throughout his divorces and immigration applications for citizenship by an attorney, Earl David, who was prosecuted for fraud under the following facts:

> From **1996 until early 2009**, DAVID operated a Manhattan-based immigration law firm (the "David Firm") that took in millions of dollars in fees from its alien-clients for purportedly securing them legal immigration status. In return for fees of up to $30,000 per alien-client, the David Firm applied for and obtained thousands of DOL certifications based upon phony employment sponsorships and fabricated documents, including fake pay stubs, fake tax returns, and fake "experience letters," purporting to show that the sponsorships were real and that the aliens possessed special employment skill sets justifying labor-based certification by DOL. In reality, the sponsors had no intention of hiring the aliens, and the sponsor companies often did not even exist other than as shell companies for use in the fraudulent scheme. As a result of the fraud, DOL issued thousands of certifications, and immigration authorities granted legal status to thousands of the David Firm's clients, when such adjustments were unwarranted and otherwise would not have been made. The Government has identified at least 25,000 immigration applications submitted by the David Firm – the vast majority of which have been determined to contain false, fraudulent, and fictitious information.[1]

As a result of the above criminal conduct, Attorney David was sentenced to 60 months imprisonment in the SDNY. It is our understanding that Mr. Ellison used the "services" of Attorney Earl David on multiple occasions.

Specifically:

(a) Ellison, in 1999, allegedly "married" a woman named Angelina Lidiagina who allegedly lived at 2064 77th Ave. Apt 2R, Brooklyn, NY 11219. That address does not exist. Ellison claimed he had a child with Angelina Lidiagina. He divorced

---

[1] https://www.ice.gov/news/releases/new-york-city-lawyer-sentenced-5-years-prison-operating-substantial-immigration-fraud

Angelina Lidiagina that same year 2002. Divorce paperwork under Sup Ct Index number states, "no social security number." (Index No. 305107/02-NY Supreme Ct. Motion of Earl David, Esq.).

(b) Ellison is naturalized on May 15, 2001

(c) Ellison and his common law wife, Anna Scheglovia, have a child together in 2000 named Ekatherine Kapitonova.

(d) In 2003, Ellison marries Anna's sister and his sister-in-law, Nadia Scheglovia while common law wife Anna Shcheglova was pregnant with second child Elizaveta Kapitonova.

(e) Approximately one month after his marriage to Nadia, Ellison self-surrenders to serve a prison term.

(f) Ellison's common law wife, Anna, and her sister Nadia lived in the same apartment from the time Ellison went to jail until his release.

(g) In 2005, Ellison is released from prison.

(h) In 2007, Ellison divorces his sister-in-law after she obtains United States citizenship.

(i) Ellison officially marries his long-time common law wife Anna Shcheglova in 2010 after divorcing the sister-in-law and after her citizenship was granted.

Mr. Levin does not believe that Ellison disclosed much of the above to the government, and instead misled, withheld and in certain instances likely lied to the government during his proffer sessions. As you know, the government's Brady obligation to disclose material evidence favorable to a criminal defendant applies not only to exculpatory evidence, but also to evidence that could be used to impeach government witnesses. See United States v. Bagley, 473 U.S. 667, 676 (1985). Here, where witness testimony was key to the defendant's conviction and largely uncorroborated, such evidence is material. See, e.g., Giglio v. United States, 405 U.S. 150, 154-55 (1972).

3

**Witness: Val Cooper**

Val Cooper admitted at trial that he had been arrested in 1983 in Kiev for theft and additionally jailed in the Ukraine in 2002.

(a) Cooper's green card application before becoming a US citizen should have reflected his two convictions from the Ukraine, but were likely intentionally omitted as to not disqualify him from becoming a US citizen.

(b) Cooper is alleged to have committed wire fraud as part of this indictment. It is well known by this prosecution that Cooper funneled extraordinary sums of money from Ukrainian money brokers to the United States. Nevertheless, Cooper makes an application through his attorney to travel to Suffern, NY where he allegedly found a job as a "buyer" for a Ukrainian clothing company. The company name is not named in the letter to the court. The address of the so-called warehouse is additionally not placed in the letter. How he would get compensated while working for this so-called warehouse is also missing from the letter application. Cooper asks the court to modify his bail conditions to travel to Suffern, NY for this purpose. It was widely known through proffer sessions and trial testimony that Cooper had made millions of dollars off of heists and scams involving importation of automobiles. It is apparent that Cooper would have to potentially involve himself in wiring money or conducting business in the Ukraine if he worked for a clothing company based in the Ukraine. At some point Cooper was on an Interpol list for his crimes in the Ukraine. He likely would not be permitted to conduct wire transfers or open bank accounts in the US involving Ukrainian business.

Although this potential illegal conduct would be occurring after Mr. Levin's trial in July of 2024, we believe the Government has a continuing obligation under <u>Brady</u> and Mr. Levin's basic due process rights require the government to provide the defense with alleged illegal activities of its witnesses should it effect the sentencing or the appeal of Mr. Levin.

We look forward to your response.

Sincerely,
/s/Matthew D. Myers
Matthew D. Myers

Attorney for Alex Levin

4